O

JS - 6

cc: order, docket, remand letter to
Los Angeles Superior Court, No. BC511084

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSIE RODIS, an individual, and DANIEL KATZMAN, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, an Illinois corporation; SERVICEMASTER PROFESSIONAL RESTORATION, a California entity of unknown form; ENVIROCHECK, INC., a California corporation, <br><br> Defendants. | Case No. CV 13-07686 DDP (CWx) <br><br> **ORDER DENYING DEFENDANT ALLSTATE'S MOTION TO DISMISS FRAUDULENTLY JOINED DEFENDANTS AND GRANTING PLAINTIFFS' MOTION TO REMAND.** <br><br> [DKT Nos. 7, 8, 9] |

Before the court are Plaintiffs Jose Rodis and Daniel Katzman's Motion to Remand Action to State Court, Defendant Allstate Insurance Company's Motion to Dismiss Fraudulently Joined Defendants, and Defendant ServiceMaster Professional Restoration's Motion to Dismiss Pursuant to Rule 12(b)(6). The motions are fully briefed and suitable for adjudication without oral argument. The court now adopts the following order.

**I. Background**

The present motions arise from Plaintiffs' joining of two instate companies, ServiceMaster Professional Restoration ("ServiceMaster") and Envirocheck, Inc. ("Envirocheck"), with whom they dealt in pursuing property insurance claims under a policy issued by Allstate Insurance Company ("Allstate"). (First Amended Complaint ¶ 9.)

Plaintiffs allege the following in their First Amended Complaint. Plaintiffs insured their home with Allstate, which issued them an "Allstate Deluxe Homeowner Policy Plus" policy for their property at 6195 Rodgerton Drive in Los Angeles, California. (Id. ¶ 10.) Two events in early 2012 led them to file claims under the policy. In April 2012, a wind and rain storm caused damage to the property's roof and various rooms' ceilings and walls. (Id. ¶ 11.) In May 2012, Plaintiffs discovered that a pipe connected to the bathroom shower valve had suddenly broken and was leaking. (Id. ¶ 12.)

Plaintiffs allege that, on June 5, 2012, Allstate dispatched ServiceMaster to the residence and directed ServiceMaster to conduct restoration and cleaning services with respect to the plumbing-related damage. (Id. ¶ 15.) On the same day, Allstate and/or ServiceMaster dispatched Envirocheck to test for lead and asbestos in the bathroom, but not to test for mold. (Id. ¶ 16.) Plaintiff Rodis allegedly signed a written "work order" form provided by Envirocheck stating that Rodis was the client, that she was responsible for paying for Envirocheck's services, and that the results of the company's testing would be for her sole and exclusive use and benefit. (Id.)

1    Subsequently ServiceMaster informed Plaintiffs that Allstate
2 would not be covering the plumbing problem because the policy
3 covered only burst pipes and there was no coverage for a leaking
4 pipe. (Id. ¶ 18.)
5    Plaintiffs assert that Envirocheck never submitted a bill to
6 Plaintiffs and never reported the results of their testing to
7 Plaintiffs. (Id. ¶ 19.) Plaintiffs also assert that subsequent
8 independent testing commissioned by Plaintiffs confirmed the
9 existence of lead, asbestos, and mold at the property. Plaintiffs
10 allege that Allstate paid Envirocheck directly in order to obtain
11 the test results directly and hide them from Plaintiffs. (Id.)
12    Subsequently, following seven months of investigation and
13 Plaintiffs' hiring of a public adjuster to present claims to
14 Allstate, in January 2013 Allstate issued a partial letter of
15 denial to Plaintiffs. (Id. ¶ 20-26.) Allstate stated that it was
16 extending coverage "only to the damaged living room ceiling" and
17 stated that the loss was $800, below the policy's $1000 deductible.
18 (Id. ¶¶ 22-26.)
19    On September 17, 2013, Plaintiffs filed the instant suit,
20 asserting causes of action for breach of contract (against
21 Allstate), breach of the implied covenant of good faith and fair
22 dealing (against Allstate), and civil conspiracy to defraud
23 (against Allstate, ServiceMaster, and Envirocheck). (Id. ¶¶ 28-48.)
24    As discussed below, the present motions primarily concern the
25 civil conspiracy to defraud claim. Plaintiffs First Amended
26 Complaint describes this claim as follows:
27        43. Upon information and belief, Envirocheck and
28        ServiceMaster entered into a conspiracy with Allstate whereby

3

1  Envirocheck and ServiceMaster would provide investigations and
2  reports on damaged homes to Allstate that concealed the true
3  nature and scope of damage so that damages appeared to be much
4  less than actually incurred.

5      44. Upon information and belief, Envirocheck and
6  ServiceMaster maintained an unwritten policy and agreement
7  with Allstate whereby Allstate sends claimants to Envirocheck
8  and ServiceMaster for inspections and/or reports. Envirocheck
9  and ServiceMaster then either provide investigations or
10 reports that conceal the true nature and scope of damage.
11 Allstate then uses these inaccurate, fraudulent inspections or
12 reports as an excuse to deny or delay claims, although
13 benefits are justly due and owing. In exchange, Allstate
14 directs claimants to undergo inspections by Envirocheck and
15 ServiceMaster and pays Envirocheck and ServiceMaster
16 substantial sums of money for conducting these inspections and
17 preparing these false reports.

18     45. The systematic, methodical and institutional pattern
19 and practice as described above was followed in relationship
20 to plaintiffs' subject claims.  Envirocheck took the lead and
21 asbestos samples from plaintiffs' home, falsely lead [sic]
22 plaintiffs to believe that the results of the testing would be
23 for plaintiffs' sole and exclusive benefit, gave the test
24 results directly to Allstate and/or ServiceMaster instead of
25 plaintiffs, and then concealed the test results from
26 Plaintiffs. ServiceMaster refused to provide restoration
27 services to the storm-related damage, intentionally failed to
28 recommend testing for mold, and arbitrarily withdrew

4

1     restoration services from the plumbing related damage based on
2     its own coverage decision.
3 (¶¶ 43-45.)
4     On October 17, 2013, Allstate removed this action to federal
5 court under 28 U.S.C. § 1441(b), asserting that jurisdiction may be
6 exercised on the basis of diversity. (DKT No. 1 (Notice of Removal
7 ¶ 15.)) Allstate subsequently moved to have ServiceMaster and
8 Envirocheck--both non-diverse defendants based in California--
9 dismissed as fraudulently joined such that there would be complete
10 diversity. (DKT. No. 7.) Plaintiffs moved to remand the case back
11 to California Superior Court. (DKT. No. 8.) Defendant ServiceMaster
12 moved to dismiss for failure to state a claim under Rule 12(b)(6.)
13
14 **II. Legal Standard**
15     The present motions concern whether this court may exercise
16 diversity jurisdiction over the instant suit.
17     A diversity action such as the present one may only be removed
18 to federal court where there is complete diversity of citizenship.
19 Hunter v. Philip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009).
20 There is a strong presumption against removal jurisdiction, which
21 "must be rejected if there is any doubt as to the right of removal
22 in the first instance." Geographic Expeditions, Inc. v. Estate of
23 Lhotka ex. rel Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010) (citing
24 Gauss v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). Allstate,
25 as the proponent of federal jurisdiction, bears the burden to prove
26 that removal is proper. Id.
27     Allstate relies on an "exception to the requirement of
28 complete diversity" which applies "where a non-diverse defendant

has been 'fraudulently joined.'" Morris v.. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir.2001). "[F]raudulently joined defendants will not defeat removal on diversity grounds." Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir.1998). However, "there is a general presumption against fraudulent joinder." Fraudulent joinder will only be found "'[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir.2007) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir.1987)).

As a defendant asserting fraudulent joinder, Allstate "carries the heavy burden of establishing the absence of any possibility of recovery" on the part of Plaintiffs. Lighting Sci. Group Corp. v. Koninklijke Philips Elecs. N.V., 624 F.Supp.2d 1174, 1179 (E.D.Cal.2008); see also id. ("The claim of fraudulent joinder must be supported by clear and convincing evidence, with all ambiguities resolved in favor of the non-removing party."). Remand must be granted unless the defendant establishes that there is no possibility that the plaintiff could prevail on any cause of action it asserted against the non-diverse defendant. See Levine v. Allmerica Fin. Life Ins. & Annuity Co., 41 F.Supp.2d 1077, 1078 (C.D.Cal.1999).

Deciding whether a defendant is fraudulently joined requires a court to "walk a very fine line: it must consider the merits of a matter without assuming jurisdiction over it." Davis v. Prentiss Props. Ltd., 66 F.Supp.2d 1112, 1114 (C.D.Cal.1999). "[S]ome room must exist between the standard for dismissal under Rule 12(b)(6),

6

for example, and a finding of fraudulent joinder." Id. at 1115. Even "where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the case in state court." Ballesteros v. American Standard Ins. Co. of Wisc., 436 F.Supp.2d 1070, 1072 (D. Ariz.2006) (quoting Albi v. Street & Smith Publ'ns., 140 F.2d 310, 312 (9th Cir.1944)). Merely a "'glimmer of hope' that plaintiff can establish [a] claim is sufficient to preclude application of fraudulent joinder doctrine." Mirchandani v. BMO Harris Bank NA, No. CV-11-2286-PHX-GMS, 2011 WL 6019311, at *3 (D.Ariz. Dec. 5, 2011). In fact, "a federal court's fraudulent-joinder consideration should be akin to an application of Rule 11." Davis, 66 F.Supp.2d at 1115.

Accordingly, in order to decide whether Plaintiff fraudulently joined ServiceMaster and Envirocheck, the Court must examine Plaintiffs' claims against these parties, although the analysis is not as searching as would be appropriate for a Rule 12(b)(6) motion to dismiss. See Davis, 66 F.Supp.2d at 1114.

**III. Discussion**

Because their validity is dispositive of the present motions, the court focuses on Allstate's arguments for fraudulent joinder and considers them in turn.

First, Allstate argues that ServiceMaster and Envirocheck must be dismissed because "an agent of an insurance company cannot be liable for conspiring to breach a duty owed by the insurance company." (Motion to Remand at 5.) In support of this contention, Allstate relies principally on Icasiano v. Allstate Ins. Co., 103

7

1  F.Supp.2d 1187, 1190 (N.D.Cal. 2000). There, a plaintiff alleged a
2  conspiracy to defraud between an insurance company and the
3  insurance company's own adjuster. As discussed further below, the
4  court held that the conspiracy claim could not lie because "an
5  agent cannot be held liable for a conspiracy to violate a duty
6  peculiar to the insurance company." Id. at 1189. Allstate argues
7  that, under this principle, the claims against ServiceMaster and
8  Envirocheck must be dismissed because, it claims, the only duties
9  Plaintiffs have alleged to have been violated are those owed to
10 Plaintiffs by Allstate per the insurance policy. (Fraudulent
11 Joinder Motion at 6.)

    Plaintiffs counter by asserting that Icasiano is inapposite
because "Plaintiffs are not alleging that Allstate conspired with
itself," i.e. its own employee, but instead "that Allstate
conspired with two third parties." (Opposition to Fraudulent
Joinder Motion at 10.) Plaintiffs rely on Younan v. Equifax Inc.,
111 Cal. App. 3d 498, 511 (1980), which involved allegations that
the defendant, an insurer, hired and employed a separate company to
select and induce a local doctor to examine the plaintiff and
prepare a medical report which would falsify the Plaintiff's
condition. Id. at 478. In holding that the conspiracy claim was
viable, the court explained that "[a] cause of action for
conspiracy will lie against agents and employees of insurers even
though the former are not parties to the agreement of insurance
when they join the insurer in a conspiracy to defraud the insured."
Id. at 511.

    Similarly, plaintiffs rely on Sprague v. Equifax, Inc., 166
Cal. App. 3d. 1012 (1985) (finding that plaintiff properly alleged

8

a conspiracy to defraud where there was sufficient evidence from which a jury could infer that a non-insurance company engaged by insurer to investigate claim conspired with insurance company to fraudulently deny benefits) and Diaz v. Allstate Insurance Group, 185 FRD 586 (1998) (remanding action to state court after permitting joinder of non-diverse third-party contractor defendants where plaintiff alleged that insurer and contractors conspired to defraud plaintiffs by, inter alia, underestimating damages).

Plaintiffs assert that the approval expressed in Younan, Spraque, and Diaz for claims alleging conspiracies to defraud by insurers and third-party entities provides strong authority for Plaintiffs' instant claim against Allstate, ServiceMaster, and Envirocheck. The court agrees. Allstate appears to acknowledge that these cases are strong authority for Plaintiffs, but asserts that those cases are no longer good law because they predate Icasiano. (Fraudulent Joinder Motion at 1.)

The court is unpersuaded. First, contrary to Allstate's contention, it does not appear that the Icasiano court contradicted the earlier cases on which Plaintiffs rely. In considering the import of Younan, the Icasiano court explained:

> Younan involved allegations that the defendant insurer, American Home Assurance Company hired and employed defendant Equifax Inc. to select and induce a local doctor to examine the plaintiff and prepare a medical report which would falsify the plaintiff's condition. Younan, 111 Cal.App.3d at 512, 169 Cal.Rptr. 478. The plaintiff alleged that American Home Assurance Company retained Equifax knowing that Equifax worked with doctors who would participate in the scheme to prepare

9

       false medical reports. Id. As such, <u>Younan</u> involved allegations that two separate entities involved in the insurance business conspired together to defraud the plaintiff, and did not involve accusations that an employee of an insurance company conspired with the insurance company to defraud an insured. There is nothing in <u>Younan</u> to indicate that employees of insurers, engaged in the process of administering a claim, can be held independently liable to an insured under a tort or contract theory. Plaintiff has not pointed to a case similar to the present one where a court allowed a claim against an insurance agent acting solely as the representative of the insurer in the course of handling a claim.

<u>Icasiano</u>, 103 F.Supp.2d at 1190. The <u>Icasiano</u> court plainly considered <u>Younan</u> to be good law and it did not purport in any way to overrule it.

    Second, in light of the language quoted above, it is at the very least debatable whether the <u>Icasiano</u> court intended a rule that would prohibit conspiracy claims against entities which are not employees of the insurer or similarly situated in acting "solely as the representative of the insurer." <u>Icasiano</u>, 103 F.Supp.2d at 1190. Here, Plaintiffs allege that Envirocheck was not acting solely as Allstate's representative, but instead that Envirocheck identified Rodis as its client and stated that its testing services were for her sole and exclusive use and benefit. (FAC ¶ 16.)

    Third, even construing the <u>Icasiano</u> court's most general language in the light most favorable to Allstate, it would not

10

appear that the language on which Allstate relies would prevent Envirocheck from being named as a defendant. Allstate makes much of the following phrase from the Icasiano order: "As long as the duty is owed by the insurance company only, and regardless of whether it derives from contract or tort, the insurance company's agents cannot be held liable for conspiring to violate that duty." Icasiano, 103 F.Supp.2d at 1189-90, quoted by in Allstate's Fraudulent Joinder Motion at 6. However, the condition "as long as the duty is owed by the insurance company only" does not appear to obtain in the current claim. While Plaintiffs' complaint focuses on the duties owed by Allstate under the insurance policy, Plaintiffs also appear to allege that Envirocheck breached duties Envirocheck owed independently to Plaintiffs. These duties stem from the work order allegedly signed between the parties naming Plaintiff Rodis as Envirocheck's client, which Plaintiffs claim Envirocheck breached in furtherance of its conspiracy with Allstate. (See FAC ¶¶ 16, 44, 45.)

Allstate additionally contends that Plaintiffs have failed to state facts sufficient to constitute a cause of action because "Allstate cannot be liable in tort for the non-Allstate Defendants' conduct." (Fraudulent Joinder Motion at 8.) However, the authority cited by Allstate--Rattan v. United Services Auto Ass'n, 84 Cal.App.4th 715 (2000) and Moncada v. Allstate Ins. Co., 471 F.Supp.2d 997 (N.D.Cal. 2006)--does not support such a sweeping rule. Both cases involved the question of whether an insurance company may be held liable for the faulty workmanship of its third-party contractors. Rattan held that the plaintiff could not be permitted to state a tort cause of action against an insurer based

11

on the insurer's guarantee of the contractor's work. 84 Cal.App.4th at 722. Moncada held that an insurer was not liable for a breach of express warranty by a contractor where Allstate's preferred vendor guaranteed the contractor's work. 471 F.Supp.2d at 997. As Plaintiffs point out, unlike both cases, the current action does not involve allegations of faulty workmanship, and, unlike the present case, neither Rattan nor Moncada involved allegations of a conspiracy to defraud, fraud, or negligent misrepresentation (Opposition at 11.) Accordingly, neither Rattan nor Moncada rule out the possibility, as alleged here, that third party defendants might be held liable for the fraudulent concealment of test results calculated to minimize Allstate's obligations under the insurance policy.

In sum, Allstate has not shown that Plaintiffs have "failed to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" Hamilton Materials, 494 F.3d at 1206. Accordingly, the court will not find that ServiceMaster and Envirocheck were fraudulently joined. Because both parties are non-diverse vis-a-vis Plaintiffs, the court must find that complete diversity has not been demonstrated and that the court therefore may not exercise jurisdiction under 28 U.S.C. § 1441.

**IV. Conclusion**

For the reasons set forth herein, the court DENIES Allstate's Motion to Dismiss Fraudulently Joined Defendants and GRANTS
///

12

Plaintiffs' Motion to Remand.  Additionally, because the court finds that it does not have jurisdiction over this case, it does not reach ServiceMaster's Motion to Dismiss Pursuant to Rule 12(b)(6).

IT IS SO ORDERED.

Dated: December 12, 2013

DEAN D. PREGERSON
United States District Judge

13